| | | |
|---|---|---|
| Z.H , by next friend Tianna Perry, C.H., by | : | |
| Next friend Tianna Perry, D.H. by next friend | : | |
| Patrice Robinson, K.H., by next friend Kimberly | : | |
| Spivey, and S.H., by next friend Doris Toney, | : | |
| | : | |
| Plaintiffs | : | |
| vs. | : | Civil Action No. 1:24-cv-00269 |
| | : | |
| CITY OF CHATTANOOGA TENNESSEE | : | |
| and CELTAIN BATTERSON | : | |
| Defendants. | : | |

## ANSWER OF CITY OF CHATTANOOGA

COMES the Defendant, City of Chattanooga, an entity as defined by the Tennessee Governmental Tort Liability Act at Tenn. Code Ann. §§ 29-20-101 *et seq.* the "City", and as a municipal entity defendant as set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 1978 for answer to the Complaint filed against it, would state as follows:

The City denies the Plaintiffs' recitation of events in their entirety as stated in the first four 4 unnumbered paragraphs of the Complaint. City would state that the Plaintiffs' recitation of events in the first four unnumbered paragraphs are not properly plead and are denied in their entirety as stated and will require proof during the trial of this case to determine any liability of the City and/or Officer Celtain Batterson after Batterson was shot by Roger Heard and the death of Roger Heard following his actions on August 11. 2023. It is admitted that this action has been brought on behalf of five minor children, who are asserting claims based on their relationship to Roger Heard, which is unknown at this time. It is denied that the City of Chattanooga failed to properly train and/or

Case 1:24-cv-00269-CEA-CHS   Document 20   Filed 09/04/24   Page 1 of 29   PageID #: 61

discipline Batterson before this incident occurred. The City responds to the events as described in the numbered paragraphs of the Complaint as set forth below.

## FIRST DEFENSE

The Complaint fails to state a claim against the City upon which relief may be granted.

## SECOND DEFENSE

For answer to the specific allegations contained in the numbered paragraphs of the Complaint, City Defendant would state as follows:

1.     The City is without sufficient information to admit or deny the allegations contained in Paragraph 1 of the Complaint. It is unknown as to his children or his marital status. Strict proof is herein demanded.

2.     City is without sufficient information as to the relationship of Z.H. to Roger Heard as it is unknown as to his parental or marital status to Tianna Perry, and as such the City is unable to admit or deny the allegations contained in Paragraph 2 of the Complaint. As such, strict proof of any statutory right to pursue this action on Z.H.'s behalf by Tianna Perry is herein demanded

3.     City is without sufficient information as to the relationship of C.H. to Roger Heard as it is unknown as to his parental or marital status to Tianna Perry, and as such the City is unable to admit or deny the allegations contained in Paragraph 3 of the Complaint. As such, strict proof of any statutory right to pursue this action on C.H.'s behalf by Tianna Perry is herein demanded.

4.     City is without sufficient information as to the relationship of D.H. to Roger Heard as it is unknown as to his parental or marital status to Patrice Robinson, and as such the City is unable to admit or deny the allegations contained in Paragraph 4 of the Complaint. As such, strict proof of any statutory right to pursue this action on D.H.'s behalf by Patrice Robinson is herein demanded.

5.     City is without sufficient information as to the relationship of K.H. to Roger Heard as it is unknown as to his parental or marital status to Kimberly Spivey, and as such the City is unable to admit or deny the allegations contained in Paragraph 5 of the Complaint. As such, strict proof of any statutory right to pursue this action on K.H.'s behalf by Kimberly Spivey is herein demanded.

6.     City is without sufficient information as to the relationship of S.H. to Roger Heard as it is unknown as to his parental or marital status to Doris Toney, and as such the City is unable to admit or deny the allegations contained in Paragraph 6 of the Complaint. As such, strict proof of any statutory right to pursue this action on S.H.'s behalf by Doris Toney is herein demanded.

7.     City denies the allegations contained in Paragraph 7 of the Complaint and strict proof is herein demanded. Paragraph 7 states a conclusion of law that will have to be determined by the Court based on all evidence in this case.

8.     City admits the allegations contained in Paragraph 8 of the Complaint that Batterson was acting as a CPD Investigator at the time of the incident involving Roger Heard. However, City does not have sufficient information or knowledge to admit or deny whether Batterson was acting in compliance with CPD's policy, practice, and customs since Batterson is represented by independent counsel. Therefore, for purposes of this Answer, City has insufficient information that Batterson was acting in compliance with CPD's policy, practice, and customs and such allegations are denied and demands strict proof in this case.

9.     City admits the allegations contained in Paragraph 9 of the Complaint that the City is a Tennessee municipality. However, the City would state that it is not responsible for the intentional actions of employees that acted outside of the Chattanooga Police Department's established policies and procedures.

10.     City admits the allegations in Paragraph 10 of the Complaint, provided that personal service has been obtained as to all parties.

11.     City admits the venue allegations contained in Paragraph 11 of the Complaint, however, to the extent that Paragraph 11 implies any wrongdoing on behalf of the City, the same is denied and strict proof is demanded herein.

12.     City is without sufficient information or knowledge to admit or deny the allegations of Paragraph 12 of the Complaint as to Batterson. Therefore, for purposes of this Answer, the allegations are denied, and strict proof is herein demanded.

13.     City admits the allegations contained in Paragraph 13 of the Complaint.

14.     City denies the allegations contained in Paragraph 14 of the Complaint and strict proof is demanded herein.  It is admitted that Batterson was attempting to serve an outstanding arrest warrant on Roger Heard at the time of this incident.

15.     City is without sufficient information or knowledge to admit or deny the allegations of Paragraph 15 of the Complaint as to Batterson. Therefore, for purposes of this Answer, the allegations are denied, and strict proof is herein demanded.

16.     Denied as stated in Paragraph 16 on the night of August 11, 2023.

17.     City admits that Batterson received information that Roger Hear was at a Speedway gas station that evening as contained in Paragraph 17.

18.     City admits the allegations contained in Paragraph 18 of the Complaint.

19.     City admits the allegations contained in Paragraph 19 of the Complaint. It is further admitted upon information and belief that multiple vehicles which responded to the Speedway gas station had emergency lights and/or sirens engaged.

20. City Defendant is without sufficient information or knowledge to admit or deny the allegations of Paragraph 20. Therefore, for purposes of this Answer, the allegations are denied.

21. City submits upon information and belief that video without audio from a tower camera and body camera video from some officers captures a portion of what happened during this encounter and the City denies all allegations contained in Paragraph 21 inconsistent with such video, and strict proof is herein demanded.

22. City admits, in part, and dies, in part, the allegations contained in Paragraph 22 of the Complaint. More specifically, the City admits that Batterson pulled a gun on Roger Heard and walked up to Heard's door with his gun in view. However, the City is without sufficient information to admit or deny the remaining allegations contained in Paragraph 22 and as such, the same is denied and strict proof is demanded herein.

23. City admits that Batterson was wearing jeans, a red t-shirt, and his badge on a drop-down holster at the time he approached Roger Heard. City is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 23. Therefore, for purposes of this Answer, the allegations are denied.

24. City admits, in part, and denies, in part, the allegations contained in Paragraph 24. More specifically, City will establish that Batterson was wearing jeans and a red t-shirt, but denies any wrongdoing on behalf of the City in connection with this encounter, and demands strict proof of any law enforcement improper activity. City will establish that Roger Heard was a confidential informant that previously worked with Batterson and should have been familiar with Batterson.

25. City denies the allegations contained in Paragraph 25 of the Complaint and strict proof is demanded herein.

26.     City denies the allegations contained in Paragraph 26 of the Complaint. City submits that Officer Batterson wore his badge on his drop-down holster which was not obstructed from view.

27.     City denies the allegations contained in Paragraph 27 of the Complaint. City submits that Officer Batterson wore his badge on his drop-down holster which was not obstructed from view as he approached the vehicle.

28.     City denies the allegations contained in Paragraph 28 of the Complaint based upon statements by Batterson to investigators that he identified himself as he approached the vehicle. More specifically, City admits that Batterson got out of his car with his weapon drawn and approached Heard while Heard reached for a weapon inside his vehicle which is visible on video.

29.     City admits, in part, and denies, in part, the allegations contained in Paragraph 29. City denies the allegations contained in Paragraph 29 of the Complaint based upon statements by Batterson to investigators that he identified himself as he approached the vehicle. More specifically, City admits that Batterson got out of his car with his weapon drawn and approached Heard while Heard reached for a weapon inside his vehicle which is visible on video.

30.     City denies the allegations set forth in Paragraph 30 of the Complaint based on information and belief.

31.     City admits the allegations contained in Paragraph 31 of the Complaint based on a subsequent IA investigation but will establish that Batterson was wearing his badge and was familiar to Heard as law enforcement from his previous relationship as a confidential informant with CPD who previously worked with Batterson.

32.     City denies the allegations contained in Paragraph 32 of the Complaint and strict proof is demanded herein based on the previous relationship with Batterson as a law enforcement officer that he knew.

33.     City admits, in part, and denies, in part, the allegations contained in Paragraph 33 of the Complaint. City admits that Heard shot at Batterson twice, hitting him in the arm two times, before he fled from the officer across the parking lot of the Speedway gas station. The City is without sufficient information to admit or deny the remaining allegations in Paragraph 33 of the Complaint. As such, the same is denied, and strict proof is demanded herein.

34.     City admits that three officers fired at Roger Heard at slightly different times based on Heard's actions at the Speedway gas station that evening. As such, the allegations contained in Paragraph 34 of the Complaint are denied as stated.

35.     City admits the allegations contained in Paragraph 35 of the Complaint.

36.     City admits, in part, and denies, in part, the allegations contained in Paragraph 36 of the Complaint. City admits that Heard fell to the ground and his gun landed on the ground. However, the City denies the characterization of Heard's gun "went flying," and "well out of reach," and strict proof is herein demanded of the timing and the location of the weapon.

37.     City admits that Heard was down following multiple shots. The City denies that Heard surrendered and states that body cam audio and video are available depicting the falldown of Heard and the City denies any allegation that is in conflict with the video and audio available, and strict proof is herein demanded.

38.     City admits that Officer Batterson shot at Heard while he was lying on the ground as shown in video. However, City submits that body cam video and audio along with tower video is available depicting the fall down of Heard. The City submits that the video and audio speaks for

itself and denies any allegation that conflicts with the video available and strict proof is herein demanded.

39.     City admits the allegations contained in Paragraph 39 of the Complaint. It is unknown which shot resulted in the death of Roger Heard at this time.

40.     City submits that the body cam and tower camera speak for themselves. City denies any allegations that conflicts with the events depicted on said video and audio available. City also denies any characterization that Batterson was "executing" Heard as set forth in Paragraph 40 and strict proof is herein demanded. City would also state that Paragraph 40 of the Complaint purports to submit pictures from a body cam. It is admitted that certain officers had body cameras activated, however, the City would submit that these pictures are blurry and the City does not have sufficient information to adequately authenticate the attached photos and as such, the same is denied and strict proof is further demanded.

41.     City submits that the body cam and tower camera speak for themselves. City denies any allegations that conflict with the events depicted on said video and audio available. City also denies any characterization that Batterson was "executing" Heard and strict proof is herein demanded. City would also state that Paragraph 41 of the Complaint purports to submit pictures from a body cam. However, the City would submit that these pictures are blurry and the City does not have sufficient information to adequately authenticate the attached photos and as such, the same is denied and strict proof is further demanded.

42.     City denies the allegations contained in Paragraph 42 of the Complaint and strict proof is demanded herein.

43.     City admits that Batterson shot at Heard, however, City denies the remaining allegations contained in Paragraph 43 and strict proof is herein demanded.

44.     City is without sufficient information to admit or deny the allegations contained in Paragraph 44. As such, the same is denied and strict proof is herein demanded.

45.     City admits the allegations contained in Paragraph 45 of the Complaint were referenced in an IA report. However, City submits that the Internal Affairs investigators were unable to interview Officer Batterson because he was no longer an employee following his resignation on May 1, 2024 after the conclusion of the criminal investigation by the State of Tennessee into this incident.

46.     City is without sufficient information to admit or deny the allegations contained in Paragraph 46 of the Complaint, as such, the same is denied, and strict proof is herein demanded.

47.     The allegations in Paragraph 47 are denied as stated. City admits that Officer Batterson's office was searched on May 1, 2024, as a part of another Internal Affairs investigation. However, City would state that Batterson resigned from the department while he was under investigation on several issues.

48.     City admits the allegations contained in Paragraph 48 of the Complaint.

**Batterson's Other Internal Affairs Investigations**

49.     City admits that Officer Batterson has been the subject of other Internal Affairs investigations. City further states that in each of the investigations where the allegations were sustained, Officer Batterson was disciplined appropriately by the department for policy violations each time.  The remaining statements in Paragraph 49 of the Complaint appear to be directed toward Officer Batterson. However, to the extent that these statements imply any wrongdoing by the City in connection with Batterson's actions at any time, the same is denied and strict proof is demanded herein.

<u>2015 Aggressive Pursuit and Dishonesty</u>

50.    City admits that Officer Batterson was suspended for 16 hours unpaid leave time in 2015 for a violation of a Chattanooga Police Department Policy regarding a police pursuit.  It is denied that Officer Batterson was charged with dishonesty at that time.

51.    City admits the allegations contained in Paragraph 51 of the Complaint.

52.    City admits the allegations contained in Paragraph 52 of the Complaint.

53.    City admits the allegations contained in Paragraph 53 of the Complaint.

54.    City admits, in part, and denies, in part, the allegations contained in Paragraph 54 of the Complaint. More specifically, the City admits that a PIT maneuver is appropriate in certain circumstances and that Officer Batterson stated that contact with the other vehicle was unintentional. The City is without sufficient information to admit or deny the remaining allegations contained in Paragraph 54 of the Complaint, as such, the same is denied and strict proof is herein demanded.

55.    City admits the allegations contained in Paragraph 55 of the Complaint.

<u>2017 Reprimand</u>

56.    City admits that Officer Batterson received a Letter of Reprimand in 2017 for failing to receive training and lack of communication to his chain of command. City submits that it will produce any and all information requested in its possession not subject to objections or privilege to the extent that it is relevant in this case.

<u>2019 Suspension- Second Pursuit Violation</u>

57.    City admits the allegations contained in Paragraph 57 of the Complaint.

58. The allegations contained in Paragraph 58 are not accurate as stated. The IA investigatory file is kept with other IA files involving Batterson while he was employed as a Chattanooga Police officer.

59. City admits the allegations contained in Paragraph 59 of the Complaint which resulted in the seventy 70 hour unpaid suspension by Batterson in 2019.

60. The City admits that Officer Batterson received a seventy 70 hour suspension in 2019 due to the pursuit violation and misrepresentations that were made in connection with that investigation. The Police Chief determined that Officer Batterson did not violate department policy related to submitting false reports or untruthfulness. The remaining statements in Paragraph 60 are subjective and editorializing the facts, therefore, they do not require a response from the City, other than to be denied.

## 2019 Discourtesy

61. City is without sufficient information to admit or deny the allegations in Paragraph 61. Therefore, for purposes of this Answer, the allegations are denied.

## 2023 Insubordination and Unsatisfactory Performance

62. City is without sufficient information to admit or deny whether Batterson shot and killed Roger Heard on August 11, 2023. Therefore, for purposes of this Answer, the allegations are denied. City admits that Batterson was placed on administrative leave following the August 11, 2023, officer involved shooting incident along with other officers, in compliance with Chattanooga Police Department Policies and Procedures. All allegations not specifically admitted to are hereby denied.

63. City admits the allegations in Paragraph 63.

64.     City admits that a subsequent Internal Affairs investigation revealed that while Batterson was on administrative leave, Batterson created and sent official police work product, which was in violation of Chattanooga Police Department orders to not be acting in the capacity of a police officer during administrative leave. All allegations not specifically admitted to are hereby denied.

65.     City admits the allegations in Paragraph 65.

<u>2024 Felony Aggravated Assault and Influencing a Witness</u>

66.     As it relates to the allegations before the second comma of Paragraph 66, City admits that in February 2024, Batterson had open Internal Affair Investigations involving the officer involved shooting of Roger Heard, IA Case No. 2023-081, and Insubordination, IA Case No. 2024-009 which occurred on February 10, 2024.  Further, the City responds that the Hamilton County District Attorney declined to bring criminal charges against Officer Batterson regarding the officer involved shooting of Roger Heard in December 2023. As it relates to the allegations after the second comma of Paragraph 66, City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

67.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on

or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

68.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

69.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

70.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

71.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete,

the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

72.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

73.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

74.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

75.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or

misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

76. City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

77. City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

78. City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

79.    City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

80.    City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

81.    City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

82.    City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on

or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

83.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

84.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

85.     City responds that the investigative file and findings, if any, are the best evidence of such Internal Affairs Investigation. To the extent Plaintiff's averments are inconsistent or misstate the Internal Affairs Investigative file, findings, or the investigations were not complete, the allegations and averments are denied. Further, the allegations averred by Plaintiff occurred on or about February 10, 2024, at Erlanger Hospital, which is subsequent to the incident involving Roger Heard.

86.     The City admits that Internal Affairs Investigation No. 2024-17 never reached a final conclusion since Batterson resigned on or about May 1, 2024.

## COUNT I

## Excessive Force

87.     City incorporates by reference its answers to paragraphs 1 through 86 of this Complaint as if fully stated herein.

88.     Paragraph 88 of the Complaint is denied because it states a legal conclusion and therefore the City denies the allegations of Paragraph 88 that Batterson used excessive force in violation of the Fourth and Fourteenth Amendments in his use of deadly force and strict proof is herein demanded.

89.     City admits that Roger Heard was shot, went down, and the gun was no longer on his person at certain times during this incident. As to the remaining allegations in Paragraph 89, City is without sufficient information or knowledge to admit or deny what Batterson observed at the times that he decided to use deadly force. Therefore, for purposes of this Answer, the allegations are denied.

90.     City is without sufficient information or knowledge to admit or deny the allegations in Paragraph 90 as stated based on the observations of Batterson at the time he decided to use deadly force. Therefore, for purposes of this Answer, the allegations in Paragraph 90 are denied.

91.     City is without sufficient information or knowledge to admit or deny the allegations in Paragraph 91 as stated based on the observations of Batterson at the time he decided to use deadly force. Therefore, for purposes of this Answer, the allegations in Paragraph 91 are denied.

92.     City admits the allegations in Paragraph 92. It is unknown which shot resulted in the death of Roger Heard at this time.

93.     City denies the allegations in Paragraph 93.

94.     City admits that Batterson was acting as a CPD Investigator at the time of the incident involving his use of deadly force on Roger Heard. However, City does not have sufficient information or knowledge to admit or deny whether Batterson was acting in compliance with CPD's policy, practice, and customs at the time he chose to use deadly force. Therefore, for purposes of this Answer, City denies that Batterson was acting in compliance with CPD's policy, practice, and customs.

95.     City denies that the City engaged in any improper or unconstitutional policies, customs, or practices that resulted in any damages to Plaintiffs and therefore, denies that Plaintiffs are entitled to recover any damages from the City under the Fourth or Fourteenth Amendments for violations of any constitutional rights of Roger Heard. Strict proof is demanded herein.

COUNT II

Municipal Liability

96.     City incorporates by reference its answers to paragraphs 1 through 95 of this Complaint as if fully stated herein.

97.     Paragraph 97 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 97 and strict proof is herein demanded.

98.     Paragraph 98 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 98 and strict proof is herein demanded. The City will establish that it adequately trained and adequately disciplined its officers properly based on a thorough review of complaints.

99.     Denied. Paragraph 99 of the Complaint states a legal conclusion and the City denies the allegations of Paragraph 99 and strict proof is herein demanded.

100.     City denies all of the allegations of Paragraph 100 as stated.

101.    City denies all of the allegations of Paragraph 101 as stated.

102.    City denies all of the allegations of Paragraph 102 of the Complaint as stated. This allegation states a legal conclusion and therefore the City denies the allegations of Paragraph 102 and strict proof is herein demanded.

103.    City denies all of the allegations of Paragraph 103 of the Complaint as stated. This allegation states a legal conclusion and therefore the City denies the allegations of Paragraph 103 and strict proof is herein demanded.

104.    City denies that the City engaged in any improper or unconstitutional policies, customs, or practices that resulted in any damages to Plaintiffs and therefore, denies that Plaintiffs are entitled to recover any damages from the City under the Fourth or Fourteenth Amendments for violations of any constitutional rights of Roger Heard. Strict proof is demanded herein.

COUNT III

State Law – Reckless Misconduct

105.    City incorporates by reference its answers to paragraphs 1 through 105 of this Complaint as if fully stated herein.

106.    Paragraph 106 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 106 based on information and belief and strict proof is herein demanded.

107.    City submits upon information and belief that video without audio from a tower camera and body camera video from some officers captures a portion of what happened during this encounter and the City denies all allegations contained in Paragraph 107 as stated which are inconsistent with such video, and strict proof is herein demanded.

108.    City admits that Batterson exited the vehicle while announcing himself as a police officer with his weapon drawn and headed towards Heard's driver-side car door. All allegations not specifically admitted to are hereby denied.

109.    City admits that Batterson was wearing jeans, a red t-shirt, and his badge on a drop-down holster. City is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 109. Therefore, for purposes of this Answer, the allegations are denied.

110.    City admits that Mr. Batters was wearing a badge on his drop-down holster. City is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 110. Therefore, for purposes of this Answer, the allegations are denied.

111.    City denies the allegations in Paragraph 111 based upon information and belief.

112.    City admits the allegations in Paragraph 112. However, City would state that Batterson was wearing his badge and that Batterson was known to Roger Heard as law enforcement from his previous relationship as a confidential information with CPD that specifically worked with Batterson.

113.    Paragraph 113 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 113 and strict proof is herein demanded.

114.    Paragraph 114 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 114 and strict proof is herein demanded.

115.    Paragraph 115 of the Complaint states a legal conclusion and is denied and strict proof is herein demanded.

116.    Paragraph 116 of the Complaint states a legal conclusion and therefore the City denies the allegations of Paragraph 116 and strict proof is herein demanded.

117.    City is without sufficient information or knowledge to admit or deny the allegations in Paragraph 117 as stated. Therefore, for purposes of this Answer, the allegations are denied.

118.    City is without sufficient information or knowledge to admit or deny the allegations in Paragraph 118 as stated. Therefore, for purposes of this Answer, the allegations are denied.

119.    City admits the allegations in Paragraph 119. It is unknown which shot resulted in the death of Roger Heard at this time.

120.    City denies the allegations in Paragraph 120.

121.    Paragraph 121 of the Complaint is denied based on information and belief and strict proof is herein demanded.

122.    Paragraph 122 of the Complaint states a legal conclusion, and this Defendant has insufficient knowledge to admit or deny what Batterson thought at the time he used deadly force and therefore the City deny the allegations of Paragraph 115 and strict proof is herein demanded.

123.    City admits that Batterson was acting as a CPD Investigator at the time of the incident involving Roger Heard. However, City does not have sufficient information or knowledge to admit or deny whether Batterson was acting in compliance with CPD's policy, practice, and customs at the time he chose to use deadly force. Therefore, for purposes of this Answer, City does not have sufficient information to admit that Batterson was acting in compliance with CPD's policy, practice, and customs.

124.    City denies that the City engaged in any wrongdoing and therefore denies that minor Plaintiffs are entitled to recover damages from the City. Strict proof is demanded herein.

## COUNT IV

### State Law – Assault and Battery

125. City restates its answers to paragraphs 1 through 86 of its Answer as if fully stated herein.

126. City denies the allegations in paragraph 126 and demands strict proof thereof.

127. City denies the allegations in paragraph 127 and demands strict proof thereof.

128. City admits that Batterson approached the driver's side front door of Heard's vehicle with his firearm drawn, the remainder of the allegations of paragraph 128 are denied.

129. City denies that Batterson was not wearing any part of his uniform, as he was wearing his badge on his hip. Further, City would state that Batterson was known to Roger Heard as law enforcement from his previous relationship as a confidential informant to CPD that specifically worked with Batterson.

130. City is without sufficient information to admit or deny what Roger Heard was able to see, however, City would state that Batterson was wearing his badge and that Batterson was known to Roger Heard as law enforcement from his previous relationship as a confidential informant to CPD that specifically worked with Batterson.

131. City denies the allegations in paragraph 131 of the Complaint and demands strict proof thereof.

132. City admits the allegations in paragraph 132 of the Complaint, however City Defendant would state that Batterson was known to Roger Heard as law enforcement from his previous relationship as a confidential informant to CPD that specifically worked with Batterson.

133. City denies the allegations in paragraph 133 of the Complaint and demands strict proof thereof.

134. Admitted that Roger Heard was killed, however it is denied that Roger Heard's death was unjustified and subject to state law tort liability.

135. City denies the allegations in paragraph 135 of the Complaint and demands strict proof thereof.

136. City denies the allegations in paragraph 136 of the Complaint and demands strict proof thereof.

137. City denies the allegations in paragraph 137 of the Complaint and demands strict proof thereof.

138. City admits the allegations in paragraph 138. It is unknown which shot resulted in the death of Roger Heard at this time.

139. City denies the allegations in paragraph 139 of the Complaint and demands strict proof thereof.

140. City denies the allegations in paragraph 140 of the Complaint and demands strict proof thereof.

141. City admits that Batterson was acting as a CPD Investigator at the time of the incident involving Roger Heard. However, City does not have sufficient information or knowledge to admit or deny whether Batterson was acting in compliance with CPD's policy, practice, and customs at the time he chose to use deadly force. Therefore, for purposes of this Answer, City does not have sufficient information to admit that Batterson was acting in compliance with CPD's policy, practice, and customs in paragraph 141.

142. Paragraph 142 of the Complaint does not require a response, but to the extent that a response is required City denies the allegations in paragraph 142 of the Complaint and demands strict proof thereof.

143.    The remaining paragraphs in Plaintiffs' complaint assert a prayer for relief and to the extent that they state any claims for damages against the City, such claims are denied in their entirety and strict proof is demanded thereof.

144. Any other allegations set forth in the Complaint not specifically addressed are denied and strict proof is demanded thereof.

## THIRD DEFENSE

City Defendant specifically asserts all defenses applicable to them under the Tennessee Governmental Tort Liability Act "TGTLA", T.C.A. §§ 29-20-101 *et seq*., and incorporate by reference herein all defenses specified therein. In particular, this Defendant relies upon the following provisions:

A.    T.C.A. § 29-20-205 sets out nine 9 specific exceptions from liability where negligent acts or omissions of any employee occur within the scope of employment, including, but not limited to:

      i.    T.C.A. § 29-20-2051: The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

      ii.    T.C.A. § 29-20-2052: False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

      iii.    T.C.A. § 29-20-2055: The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause.

      iv.    T.C.A. § 29-20-2056: Misrepresentation by an employee whether or not such is negligent or intentional.

B.      T.C.A. § 29-20-307 provides for the right to trial without a jury; and

C.      T.C.A. § 29-20-403 limits any liability of governmental entities to the statutory limits of liability applicable as of the date of the incident giving rise to this action.

### FOURTH DEFENSE

City denies that the City violated Roger Heard's constitutional rights or that the City or any of its employees violated the Fourth Amendment to the United States Constitution, 42 U.S.C. §§1983 or 1985 in any actions taken toward Heard.

### FIFTH DEFENSE

The City asserts that immunity is preserved for governmental entities unless a specific exception under the TGTLA removes immunity. *See Kirby v. Macon County*, 892 S.W.2d 403 Tenn. 1994.

### SIXTH DEFENSE

The City is immune from liability and is not a proper party under the TGTLA for any intentional act or omission for which the immunity of the governmental entity is not removed by the TGTLA.

### SEVENTH DEFENSE

City denies that any claim by the Plaintiff has occurred as a result of any unconstitutional policy, custom or practice adopted by any official policymaker of the City. The City would assert that it is entitled to sovereign immunity from any liability based upon certain intentional torts and/or any negligence claims of its employees based upon the specific torts enumerated within T.C.A. § 29-20-205 (2).

## EIGHTH DEFENSE

The City would show that no actions by any other officer in connection with this incident occurred as a result of any unconstitutional policy, custom, or practice adopted by the City.

## NINTH DEFENSE

The City states that it cannot be held liable for any damages asserted by the Plaintiff claimed on the grounds that any alleged injuries sustained by the Plaintiffs were not proximately caused by or directly related to any unconstitutional policy, custom or practice of the City. The City would further specifically assert that it cannot be held liable for the actions of its employees under 42 U.S.C. § 1983 on the basis of *respondeat superior*.

## TENTH DEFENSE

The City would assert that no claim may be brought against any of its employees or judgment entered against its employees for any injury proximately caused by a negligent act or omission of an employee within the scope of employee's employment in any amount in excess of the limits established for governmental entities at T.C.A. § 29-20-403 pursuant to the provisions of T.C.A. § 29-20-310c.

## ELEVENTH DEFENSE

The City will show that it was not deliberately indifferent to Roger Heard or other citizens in providing any training or supervision of its officers prior to this incident.

## TWELFTH DEFENSE

The City would submit that they cannot be subject to punitive damages in this case as a matter of law.

**THIRTEENTH DEFENSE**

The City will establish that it properly trained and supervised its employees above and beyond the standards required under Tennessee law based upon clear actions of its policymakers prior to August 11, 2023. The City will establish that there was no negligent training or supervision of its officers on or before August 11, 2023, which proximately caused any injury or damages to Roger Heard.

**FOURTEENTH DEFENSE**

City Defendant will show that there is no proximate causation between any alleged injury of Plaintiffs and any alleged acts of the City.

**FIFTEENTH DEFENSE**

The City reserves the right to assert any additional defenses which their investigation or discovery reveals may apply to bar in whole or in part any of Plaintiff's claims.

Respectfully submitted,

CITY OF CHATTANOOGA, TENNESSEE
OFFICE OF THE CITY ATTORNEY


By: _s/ Phillip A. Noblett_
    PHILLIP A. NOBLETT – BPR #10074
    *City Attorney*
    KATHRYN C. McDONALD – BPR #30950
    AZARIUS YANEZ – BPR #36266
    CHRISTOPHER MCKNIGHT- BPR#34351
    *Assistant City Attorneys*
    100 East 11th Street, Suite 200
    Chattanooga, Tennessee 37402
    423 643-8250 - Telephone
    423 643-8255 - Fax

    *Attorneys for Defendant, City of Chattanooga*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

McCracken Poston
7713 Nashville Street
Ringgold, Georgia 30736
postonlaw@gmail.com

Jonathan D. Grunberg
Wade Gunberg &Wilson, LLC
600 Peachtree Street, NE Suite 3900
Atlanta, GA 30308
jgrunberg@wgwlawfirm.com

Mark Begnaud
mbegnaud@eshmanbegnaud.com
Michel J. Eshman
meshman@eshmanbegnaud.com
315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030

This 4th day of September, 2024.


_____s/_____Phillip A. Noblett_____
PHILLIP A. NOBLETT


City of Chattanooga, Tennessee
Office of the City Attorney
100 E. 11th Street, Suite 200
Chattanooga, Tennessee 37402
423 643-8250
pnoblett@chattanooga.gov